Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. On 16 January 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant.
2. On that date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. A set of plaintiff's medical records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
4. Defendant's answers to plaintiff's interrogatories and request for production of documents, marked as Stipulated Exhibit Number Three, are admitted into evidence.
 EVIDENTIARY RULINGS
The objections appearing on page 12 of Ms. Knowles' deposition are SUSTAINED.
***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-three years old. She received no formal education or vocational training after graduating from high school. Her employment history included work as a waitress and work for a sewing factory.
2. Plaintiff began working for defendant in 1991. In 1995, she worked in a snack bar operated by defendant inside its retail department store. Plaintiff's duties included food preparation, food service, cleaning and stocking supplies. On 16 January 1995, plaintiff injured her back while moving boxes of frozen foods.
3. As a result of her back injury, plaintiff remained out of work and was incapable of earning wages from any employer from 17 January 1995 through 17 March 1996. During this period, defendant paid plaintiff temporary total disability compensation at the rate of $126.67 per week. This compensation rate was computed based upon defendant's erroneous calculation of plaintiff's average weekly wage as being $190.00.
4. Plaintiff earned $7,089.20 during the fifty-two week period prior to 16 January 1995. However, during this period, she worked only thirty-two weeks. Therefore, her average weekly wage should have been calculated by dividing $7,089.20 by thirty-two. Calculated in this manner, plaintiff's average weekly wage was $221.54, which yields a compensation rate of $147.69.
5. As a result of the incident on 16 January 1995, plaintiff sustained a lumbosacral strain that caused low back pain and right leg pain. She did not sustain a structural spine injury or nerve root impingement as a result of that incident. After her injury, plaintiff was evaluated, examined and treated by numerous physicians. Her primary treating physician was Dr. Ferrell, a member of Raleigh Neurology. Dr. Ferrell began treating plaintiff in March 1995. Dr. Ferrell treated plaintiff's injury conservatively, prescribing medications, trigger point injections, a TENS unit and physical therapy. Beginning in August 1995, Dr. Ferrell recommended that plaintiff return to work on a graduated schedule, beginning with two hours per day and progressing over a period of time to eight hours per day.
6. On 14 February 1996, Dr. Ferrell rated plaintiff as having sustained a six percent permanent impairment of her back as a result of her injury on 16 January 1995. On 11 March 1996, he released plaintiff to return to work as a fitting room attendant and phone operator. This position was consistent with the work restrictions imposed by Dr. Ferrell.
7. Plaintiff returned to work as a fitting room attendant and phone operator beginning on 18 March 1996. Beginning on that date, plaintiff gradually increased her work hours until 18 July 1996 when she began working eight hours per day. From that date through 4 October 1996, plaintiff continued working eight hours per day, earning wages equal to or greater than the wages she earned prior to 16 January 1995. After returning to work eight hours per day, plaintiff first returned to Dr. Ferrell on 12 September 1996. At that time, plaintiff believed that her return to work had gone smoothly.
8. Plaintiff's duties as a fitting room attendant and telephone operator were consistent with the physical limitations imposed by Dr. Ferrell. Plaintiff was not required to perform duties that required physical exertion that exceeded the restrictions imposed by Dr. Ferrell. Her duties did not require her to climb or lift overhead. She was not required to bend, squat or kneel frequently. To insure that she was not required to exceed her physical restrictions, defendant took measures to insure that plaintiff's supervisors knew of her restrictions.
9. After returning to work for defendant, plaintiff received two pay increases.
10. Plaintiff last worked for defendant on 4 October 1996. On that date, and thereafter, plaintiff was capable of working for defendant as a fitting room attendant and telephone operator. However, plaintiff did not return to work for defendant as scheduled. Rather, she telephoned defendant's store manager on 11 October 1996 and informed him that she was resigning. Prior to 11 October 1996, plaintiff did not telephone defendant to report that she would be absent.
11. On 14 October 1996, plaintiff began working as a cashier for Piggly Wiggly. Plaintiff worked in this position through July 1997. She was capable of working as a cashier thirty-seven hours per week. After she resigned from her employment with Piggly Wiggly, she worked for a nursing home for approximately one week. At the time of the hearing, she was employed as a cashier and was capable of working at least thirty-five hours per week.
12. Plaintiff reached maximum medical improvement in December 1996. She retained a six percent permanent impairment of her back as a result of her injury on 16 January 1995.
13. From 18 March 1996 through 17 July 1996, plaintiff's capacity to earn wages was partially diminished as a result of her injury on 16 January 1995. Beginning 18 July 1996, plaintiff regained her capacity to earn wages equal to or greater than the wages she earned prior to 16 January 1995.
14. Plaintiff's failure to continue earning wages at that rate after 4 October 1996 was due to her voluntary resignation from suitable employment that had been procured for her by defendant.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 16 January 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $147.69 per week from 17 January 1995 through 17 March 1996. N.C. Gen. Stat. § 97-29.
3. As a result of her injury, plaintiff is entitled to weekly payment of temporary partial disability compensation at the rate of 66 2/3% of the difference between $221.54 and the weekly wages she earned from 18 March 1996 through 17 July 1996. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $147.69 per week for eighteen weeks. N.C. Gen. Stat. § 97-31(23).
5. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on 16 January 1995. N.C. Gen. Stat. § 97-25.1.
6. Defendant is entitled to a credit for the temporary disability compensation previously paid to plaintiff.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $147.69 per week from 17 January 1995 through 17 March 1996. This amount shall be paid in a lump sum subject to the attorney's fee approved in paragraph 6 and credit due defendant in paragraph 5.
2. Defendant shall pay plaintiff temporary partial disability compensation at the rate of 66 2/3% of the difference between $221.54 and the weekly wages she earned from 18 March 1996 through 17 July 1996. This amount shall be paid in a lump sum subject to the attorney's fee approved in paragraph 6 and credit due defendant in paragraph 5.
3. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $147.69 per week for eighteen weeks. This amount shall be paid in a lump sum subject to the attorney's fee approved in paragraph 6.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of her injury on 16 January 1995.
5. Defendant shall receive a credit for the temporary disability compensation previously paid to plaintiff.
6. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff, after the credit due defendant, shall be deducted from those amounts and paid directly to plaintiff's attorney.
7. Defendant shall pay the costs.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ LAURA K. MAVRETIC COMMISSIONER